

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| LENNY J. RUSTAD,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA CORPORATION and BANK OF AMERICA, N.A.,<br><br>Defendants. | CV 16–72–M–DLC<br><br>ORDER |

Before the Court is Defendants Bank of America Corporation and Bank of America, N.A.'s ("BANA") motion to dismiss.[1] For the reasons given below, the Court grants the Defendants' motion in part and denies it in part.

**BACKGROUND**

"On a motion to dismiss, material allegations of the complaint are taken as admitted, and the complaint is to be liberally construed in favor of the plaintiff." *Kennedy v. H & M Landing, Inc.*, 529 F.2d 987, 989 (9th Cir. 1976).

Plaintiff Lenny Rustad ("Rustad") owned a residence at 820 Birch Street in Anaconda, Montana. On May 30, 2007, Rustad secured a mortgage for his

---

[1]The Court recognizes that the Defendants dispute the allegations made against Bank of America Corporation because they are an improper party. However, the Court will address the Defendants in the same manner as the Defendants' brief, using "BANA".

-1-

residence from Ascent Home Loans, Inc. After securing the mortgage, the servicing of the loan was transferred to BANA.

On September 14, 2009, Rustad received his first letter from BANA introducing the Home Affordable Modification Program ("HAMP"). The letter invited Rustad to enter into a loan modification during HAMP's trial period. In order to qualify for the program, Rustad submitted the documentation requested by BANA and made three trial period payments with the final payment being paid on December 1, 2009. Rustad subsequently received a statement from BANA indicating he was in the HAMP trial period plan.

Rustad then received a letter from BANA on January 23, 2010, warning him that he must make a fourth trial period payment in order to qualify for the HAMP modification. Rustad paid the fourth trial period payment. In February and March 2010, Rustad received letters from BANA indicating he remained in the HAMP trial period plan. On July 15, 2010, Rustad received a notice from BANA stating that the parties had mutually agreed upon a "Special Forbearance" and that Rustad's failure to make his past due payments under the "Special Forbearance" resulted in termination. Following this notice, Rustad continued to pay the modified loan amount, but BANA rejected the payment and demanded payment of his total past due amount of approximately $16,000.

On April 7, 2011, Rustad received a letter from BANA introducing the National Homeownership Retention Program ("NHRP") and requested that he send in certain documents. BANA sent two subsequent letters in May 2011 acknowledging receipt of the documents sent by Rustad for his application for a NHRP modification. On July 13, 2011, BANA sent a letter to Rustad indicating Rustad was not eligible for any modifications and threatened foreclosure.

On July 16, 2011, BANA sent another letter to Rustad indicating that the previous determination that he was not eligible for the HAMP program was erroneous and invited him to reapply. Rustad reapplied for the HAMP program. On October 31, 2011, BANA stated that since Rustad has not paid his past due amount, his home loan was being referred to a Foreclosure Review Committee.

On April 12, 2012, Rustad received a letter from his designated "single point of contact" at BANA informing him that he may be eligible for several of BANA's mortgage assistance programs. On May 28, 2012, BANA informed Rustad by phone that he was eligible for the Mortgage Settlement Program. Further, BANA advised Rustad that to be eligible for the Mortgage Settlement Program, Rustad would have to forgo a HAMP review. Rustad agreed to forgo a HAMP review so he could apply for the Mortgage Settlement Program.

BANA contacted Rustad again on August 17, 2012, stating that he would be

eligible for a new modification program introduced by a settlement agreement entered into by state and federal governments and BANA. BANA acknowledged that Rustad had begun the modification process by sending in documents and information, but then requested an additional twenty-one documents. Rustad complied and sent BANA all relevant documents in September 2012.

In October 2012, BANA sent several letters to Rustad stating they had not received all the proper documentation as requested. Again, Rustad sent BANA the requested documentation. On November 5, 2012, Rustad was notified by BANA that his loan modification was denied due to insufficient documentation.

On January 12, 2013, Rustad received another loan modification package from BANA indicating that he was eligible for a new loan modification program introduced due to the national settlement between state and federal government and BANA. Based on the facts this is presumably the same loan modification that was offered to Rustad in August 2012. Rustad filled out all the forms included in the package and returned them to BANA. On June 8, 2013, BANA sent a final letter denying Rustad a loan modification due to failure to produce all required documentation. Rustad appealed the final denial of a loan modification to BANA. The appeal was denied on July 10, 2013.

On November 12, 2013, BANA notified Rustad that BANA will no longer

be servicing his loan. BANA transferred the loan servicing to Specialized Loan Servicing. Subsequently, on December 29, 2015, Rustad's residence was sold at a foreclosure sale.

## LEGAL STANDARD

Rule 12(b)(6) motions test the legal sufficiency of a pleading. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the court can draw a "reasonable inference" from the facts alleged that the defendant is liable for the misconduct alleged. *Id.* On a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Kneivel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## DISCUSSION

BANA seeks dismissal of this suit, arguing: (1) that Rustad's claims for violation of the Consumer Protection Act ("CPA"), fraud, deceit, and violation of the Equal Credit Opportunity Act ("ECOA") are time-barred; (2) that Rustad improperly asserts claims under the National Mortgage Settlement; (3) that Rustad fails to plead fraud, negligent misrepresentation or deceit with particularity; (4) that Rustad's claims for negligence and negligent misrepresentation are insufficiently pled; (5) that Rustad's breach of contract claims are insufficiently pled; and (6) that Rustad fails to state a prima facie case for an ECOA violation.

Rustad concedes BANA's arguments regarding the breach of contract and violation of the Equal Credit Opportunity Act claims. Therefore, BANA is entitled to dismissal of Count VIII and Count X of Rustad's complaint. The remaining motions to dismiss will be addressed below.

### I. Statutes of Limitations

Statutes of limitations must be applied uniformly, regardless of the merits of a plaintiff's case. *Carey v. Bank of America, N.A.*, 2016 WL 4440686, *3 (D. Mont. 2016). "The statute of limitations does not discriminate between the just and unjust claim." *Schaffer v. Champion Home Builders Co.*, 747 P.2d 872, 874 (Mont. 1987). The policy underlying statutes of limitations is, "at its roots, one of

basic fairness." *Gomez. v. State*, 975 P.2d 1258, 1263 (Mont. 1999) (citation and internal quotation marks omitted). The statutes exist to compel plaintiffs to bring claims in a reasonably timely manner, affording protection to defendants and promoting justice by ensuring that evidence is reliable. *Johnston v. Centennial Log Homes & Furnishings, Inc.*, 305 P.3d 781, 794 (Mont. 2013).

### A. Counts I, II and III.

BANA argues that Counts I and II, CPA violations, and Count III, fraud, are barred by the statutes of limitations. Under Montana law, CPA and fraud actions are subject to a two-year statute of limitations. Mont. Code Ann. §§ 27–2–203, 27–2–211. Because Rustad filed his complaint on June 8, 2016, his claims for CPA violations and fraud may survive only if they accrued on or after June 8, 2014.

In regards to Rustad's CPA violation claims, BANA does not dispute any element other than damages. BANA contends that Rustad alleges damages other than the foreclosure of his house, and therefore all the elements of the claim had accrued prior to the December 29, 2015 foreclosure. Rustad argues that the CPA violations are not time-barred because the damages did not occur until the foreclosure of his house on December 29, 2015.

Montana Code Annotated § 27–2–102(2) provides that the statute of

limitation "begins when the claim or cause of action accrues." Thus, "a claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action." Mont. Code Ann. § 27–2–102(1)(a); *Estate of Watkins v. Hedman, Hileman & Lacosta*, 91 P.3d 1264, 1269 (Mont. 2004) ("the statute of limitations begins when all elements of a claim, including damages, have occurred"). "Lack of knowledge of the claim or cause of action, or of its accrual, by the party to whom it has accrued does not postpone the beginning of the period of limitation." Mont. Code Ann. § 27–2–102(2). It is also not "necessary to know the total extent of damages that an act causes to begin the running of the statute of limitations." *E.W. v. D.C.H.*, 754 P.2d 817, 820 (Mont. 1988), *superseded by statute on other grounds*.

Rustad alleges several additional damages other than the foreclosure of his house. Rustad claims that he wasted significant time, energy, effort, and money pursuing a modification, and that he suffered significant emotional distress from the false promises of BANA. (Doc. 1 at 19.) Therefore, since BANA stopped servicing Rustad's loan in 2013, the damages from BANA's improper loan servicing had occurred prior to 2013. Although Rustad may not have been aware of the total extent of his damages until the final foreclosure of his house, it is clear

that the other damages Rustad alleges were present between 2009 and 2013. Further, it was not necessary for Rustad to know the total extent of his damages for the statute of limitations to begin. The Court finds that the damages associated with Rustad's CPA violation claims were present prior to June 8, 2014, and, therefore, the statute of limitations bars Rustad's CPA violation claims. Counts I and II are dismissed.

Next, BANA argues that Count III, fraud, is time-barred because Rustad had actual knowledge of the facts that give rise to the fraud claim before contacting an attorney. Rustad counters that the statute of limitations did not begin until he was notified by an attorney in 2015 that BANA's servicing of the loan may constitute fraud. "The discovery rule provides that a statute of limitations period does not begin until the party discovers, or in the exercise of reasonable diligence would have discovered, the facts constituting the claim." *Draggin'Y Cattle Co., Inc. v. Addink*, 312 P.3d 451, 456 (Mont. 2013) (citing Mont. Code Ann. § 27–2–102(3)). "However, this rule only applies when the facts constituting the claim are concealed, self-concealing, or when the defendant has acted to prevent the injured party from discovering the injury or cause." *Id.*

Rustad's fraud claim is based on the following facts: BANA promised loan modifications, denied all loan modifications based on inadequacies in his

application, but then solicited Rustad to apply another loan modification program. (Doc. 1 at 7-11; 15-9.) Rustad was personally aware of all these facts while they were occurring. Thus, the actions of BANA from 2009 to 2013 were not concealed or self-concealing. Further, Rustad's consultation with an attorney does not toll the statute of limitations because lack of knowledge of one's legal rights is not sufficient to apply the discovery rule. *See* Mont. Code Ann. § 27–2–102(1)(a). Accordingly, BANA is entitled to dismissal of Count III of Rustad's complaint.

**B.     Counts IV, V, VI, VII, and IX**

BANA contends that Rustad's claims for negligent misrepresentation, negligence, and deceit are also barred by the statute of limitations. Under Montana law, negligence and breach of the covenant of good faith and fair dealing actions are subject to a three-year statute of limitations. Mont. Code Ann. §§ 27–2–204(1); 27–2–202(3). Claims for deceit where no penalty is sought are also subject to a three-year statute of limitations. Mont. Code Ann. § 27–2–204(1); *Driscoll v. Singing Tree Farms, Inc.*, 2015 WL 569998, *2 n.2 (Mont. 2015). Since Rustad filed his complaint on June 8, 2016, his claims for negligent misrepresentation, negligence, and deceit may survive only if they accrued on or after June 8, 2013.

With regards to Count V, Deceit Prior to the Consent Judgment, Rustad

argues that BANA deceived him numerous times prior to the federal and state government's lawsuit against BANA. (Doc. 1 at 28.) The Consent Judgment from that lawsuit was issued on April 4, 2012. (Doc. 1 at 14.) Thus, any deceitful acts by BANA prior to the Consent Judgment occurred well before June 8, 2013. Thus, BANA is entitled to dismissal of Count V because it is time-barred.

In regards to Counts IV, VI, VII, and IX, Rustad argues that any damages that may have occurred during the loan modification process were not realized until the final denial of the his loan modification application and the resulting loss of his home. Because Rustad does not dispute that BANA initiated the alleged pattern of negligence in 2009, when he first sought a modification, the theory can only succeed under the continuing tort doctrine.

Generally, a party's ignorance of a potential claim cannot stop the statute of limitations from running. *Christian v. Atl. Richfield Co.*, 358 P.3d 131, 152 (Mont. 2015) (citing Mont. Code Ann. § 27–2–102(2)). However, the continuing tort doctrine provides an exception to the general rule. *Id.* at 140. "A continuing tort is one that is not capable of being captured by a definition of time and place of injury because it is an active, progressive and continuing occurrence. It is taking place at all times." *Id.* (citing *Floyd v. City of Butte*, 412 P.2d 823, 826 (Mont. 1966)) (internal quotation marks omitted). Although the doctrine most frequently

applies to nuisance and trespass claims, it may be appropriate in other instances "if the injury is of a nature that may be considered continuing." *Id.* at 150.

Application of the continuing tort doctrine depends on whether a tort is temporary or permanent. *Id.* at 140. The continuing tort doctrine "applies to a temporary injury that gives rise to a new cause of action each time that it repeats." *Burley v. Burlington N. & Santa Fe Ry. Co.*, 273 P.3d 825, 828 (Mont. 2012). A permanent tort is "one where the situation has stabilized and the permanent damage is reasonably certain." *Id.* at 140 (citations and internal quotation marks omitted). On the other hand, a temporary tort is terminable; "its repetition or continuance gives rise to a new cause of action, and recovery may be had for damages accruing within the statutory period next preceding the commencement of the action." *Id.* at 141 (citations, internal quotation marks, and ellipses omitted).

Whether BANA's alleged negligence may appropriately be considered "continuing" depends on whether Rustad's injuries are temporary or permanent. Here, BANA would offer loan modifications and then deny those loan modifications due to inadequate documentation. This act by BANA was repetitive and continuous. Rustad's loan modification process with BANA did not "stabilize" until the final denial on June 8, 2013, exactly three years prior to the

filing of the complaint, and the appeal decision that was issued July 10, 2013. (Doc. 1 at 17-8.) Therefore, the allegations against BANA can be classified as a temporary tort. Consequently, Rustad's negligence claims fall within the three-year statute of limitations. Furthermore, Rustad did not realize any "permanent" damage until the loss of his house through the foreclosure sale, since during the loan modification process he assumed he would be keeping ownership in his home and foreclosure was not reasonably certain. Consequently, Counts IV, VI, VII, and IX are not time-barred.

## II.  Enforcement under the National Mortgage Settlement

BANA argues that Rustad improperly seeks enforcement of the National Mortgage Settlement and the Consent Judgment. Rustad argues that his claims are not attempts to enforce the Consent Judgment, but rather that his claims simply rely upon the Consent Judgment as evidence of liability. The Court agrees.

Count VI, Deceit Subsequent to the Consent Judgment, alleges that BANA deceived Rustad on multiple occasions after the Consent Judgment was issued. Count IX, Negligence, alleges that BANA owed Rustad a duty to handle his loan modification pursuant to the duties listed in the Consent Judgment. These claims are not based on the terms of the Consent Judgment, nor do they seek enforcement of any provision in the Consent Judgment. Rather, Rustad refers to the Consent

-13-

Judgment as evidence of the duties owed by BANA in handling the loan modification process. Because the Consent Judgment modified BANA's obligation and duties when handling loan modification applications, it is appropriate for Rustad to reference the Consent Judgment as evidence of those duties. Thus, this Court finds that Rustad does not seek to enforce the Consent Judgment. He is merely extrapolating the duties BANA owes to its borrowers pursuant to the Consent Judgment. Thus, BANA is not entitled to dismissal on Counts VI and IX.

### III. Heightened Pleading Standard as to Counts IV and VI

BANA also moves for dismissal of Rustad's claims for Count VI, deceit, and Count IV, negligent misrepresentation, because they were not pled with particularity. Rustad counters this argument by referring to the detailed eighteen-page factual account of his multi-year attempt to obtain a loan modification, and his application of those facts to the elements of the requisite claims.

Deceit and negligent misrepresentation are essentially grounded in fraud, therefore, Rule 9(b)'s heightened pleading standard applies. *Pfau v. Mortenson*, 858 F.Supp. 2d 1150, 1158 (D. Mont. 2012) (citing *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103–1105 (9th Cir. 2003); *Myers v. BAC Home Loans Servicing, LP*, 2013 WL 6231715, *8 (D. Mont. 2013). Rule 9(b) of the Federal

Rules of Civil Procedure requires that a party plead fraud-based claims "with particularity [of] the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b) requires that fraud-based allegations "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citations, internal quotation marks and alterations omitted). Claims of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged. *Id.* The higher degree of notice required by "Rule 9 does not abrogate the Rule 8 notice pleading standard—the two rules must be read together." *Paatalo v. First American Title Co. of Montana, Inc.*, 2014 WL 2002839, *5 (D. Mont. 2014).

Contrary to BANA's arguments, Rustad provides the who, what, when, where and how regarding his negligent misrepresentation and deceit claims. Rustad details BANA's correspondences regarding his loan modification. (Doc. 1 at 7-11; 15-9.) Rustad alleges that BANA would solicit him to apply for the HAMP or SLMP saying he was eligible, but then inform him that his applications for loan modification were denied due to insufficient documentation. Specifically, Rustad details BANA's fraudulent correspondents with dates and contents. Additionally, Rustad lists the only BANA employee Rustad had direct contact

with during the servicing of his loan. (Doc. 1 at 15.) These allegations are sufficient to put BANA on notice of their alleged misconduct, and are sufficient to permit BANA to mount a defense. Therefore, the Court finds that Rustad's complaint provides the requisite particularity to support the negligent misrepresentation and deceit claims. Accordingly, BANA's motion to dismiss Counts IV and VI is denied.

## IV. Count IV and IX - Negligent Misrepresentation and Negligence

Under Montana law, a negligence claim has four elements: (1) existence of a duty; (2) breach of the duty; (3) causation; and (4) damages. *White v. Murdock*, 877 P.2d 474, 476 (Mont. 1994). BANA alleges that Rustad's claims for negligence should be dismissed because Rustad failed to sufficiently plead two essential elements of negligence claims: duty and damages. Rustad counters that he pleaded sufficient facts to establish that BANA owed him a duty of care with respect to his loan modification applications, and that he enumerated specific damages caused by BANA's negligent misrepresentation.

### A. Duty

First, BANA argues that it does not owe Rustad a duty because a lender has no duty to modify or renegotiate a defaulted loan. Generally, the ordinary banking or lending relationship between a bank and its customer is a simple, arms-length,

debtor/creditor relationship that does not impose fiduciary responsibilities upon the lender with respect to its conduct towards a borrower. *Morrow v. Bank of America, N.A.*, 324 P.3d 1167, 1177 (Mont. 2014) (citation omitted). Thus, with respect to an existing loan, a lender "has no duty to modify or renegotiate a defaulted loan" for the benefit of a borrower. *Id.* But a mortgage servicer "that actively engag[es] with a borrower, particularly in the modification context, stands in a different relation to the borrower than does a traditional 'silent lender.'" *Id.* at 1178 (citing *Ansanelli v. JP Morgan Chase Bank, N.A.*, 2011 WL 1134451, *7 (N.D. Cal. 2011)). If a mortgage servicer is actively engaged with a borrower, particularly in the modification context, it may give rise to a fiduciary duty. *Id.* at 1177. Such special circumstances, if proven, could support a fiduciary duty where a defendant went beyond its conventional role as a loan servicer by, for example, soliciting a plaintiff to apply for a loan modification and by engaging with them for several months or longer. *Id.* at 1178.

In *Morrow v. BOA*, the Montana Supreme Court found that to determine whether this special relationship exists a court is required to make a fact-intensive inquiry. *Id.* at 1178, n. 1. However, the conclusion drawn from the facts that a fiduciary duty exists is a question of law. *Id.* Rustad alleges BANA solicited him for several different loan modifications over a period of several years. (Doc. 1 at

-17-

7-11; 15-9.) Additionally, Rustad alleges instances where BANA specifically advised him about what course to take in order to obtain a loan modification. He claims that BANA advised him that he must pay additional loan modification payments in order to qualify for a permanent loan modification. (Doc. 1 at 9.) Further, Rustad alleges that BANA advised him to forgo the HAMP review process in order to apply for the SLMP. (Doc. 1 at 15.) The communications between these parties may or may not give rise to a fiduciary duty by BANA in managing the loan modification process. However, the Court is unable to make a determination of BANA's duty based simply on Rustad's complaint. It does, however, satisfy Rule 8's requirement of a short and plain statement showing that it is plausible that BANA may have a duty to Rustad because it went beyond its role as a conventional loan servicer. Thus, the Court finds that because Rustad's complaint states sufficient facts to state a claim of negligence and negligent misrepresentation, these claims survive subject to the fact-intensive inquiry which will occur during later stages of this litigation.

### B. Damages

Next, BANA argues that Rustad failed to plead sufficient facts to support his damage claims caused by BANA's negligence and negligent misrepresentation. Although in Count IV Rustad only states that he "sustained damages" as a result

-18-

from BANA's negligence and negligent misrepresentation, he did incorporate all of the facts supporting the damage claims previously alleged in the complaint in Count VI. (Doc. 1 at 28, ¶ 129.) The paragraphs preceding Count IV state that during the loan modification Rustad lost money, and ultimately his house due to BANA's negligence. (Doc. 1 at 18.) Therefore, Rustad sufficiently pled damages in his complaint. BANA's motion to dismiss Counts IV and IX is denied.

## V. Counts VII - Breach of Contract and Breach of Good Faith and Fair Dealing

Finally, BANA argues that Rustad's claim for breach of contract should be dismissed because Rustad failed to sufficiently plead his breach of the deed of trust and good faith and fair dealing claims.[2]

As to the breach of the deed of trust claim, Rustad's complaint alleges that BANA breached the deed of trust when it applied Rustad's loan modification payments to a non-existent forbearance agreement. BANA argues that Rustad fails to sufficiently plead facts that support a breach because he does not allege a specific provision of the deed BANA breached. Rustad's complaint alleges that BANA misapplied his trial period loan modifications to a forbearance agreement. (Doc. 1 at 29.) This misapplication of payments initially lead BANA to demand

---

[2] BANA does not seek dismissal of Count VII to the extent it involves breach of the modification agreement.

payment of the full amount due. (Doc. 1 at 9.) Therefore, reading Rustad's complaint liberally, Rustad satisfies Rule 8's requirement of a short and plain statement showing that Rustad is entitled to relief. Rustad's Count VII as it relates to breach of the deed of trust survives.

BANA also argues that Rustad did not assert facts constituting breach of the covenant of good faith and fair dealing because the complaint does not allege facts giving rise to a special relationship. The Court has already determined that Rustad pled sufficient facts to support the conclusion that BANA went beyond the duty owed by a conventional loan servicer. Therefore, the Court finds that Rustad's complaint sufficiently alleges facts that could give rise to a special relationship between BANA and Rustad. Consequently, BANA is not entitled to dismissal of Count VII.

Accordingly, IT IS ORDERED that Defendants' motion to dismiss (Doc. 6) is GRANTED IN PART and DENIED IN PART. Counts I, II, III, V, VIII, and X are hereby DISMISSED WITH PREJUDICE. Counts IV, VI, VII, and IX survive.

Dated this 20th day of April, 2017.

Dana L. Christensen, Chief Judge
United States District Court